Young *v.* New York Central Rail Road Company.

[MONROE GENERAL TERM, December 5, 1859. *Welles, Smith* and *Johnson,* Justices.]

YOUNG *vs.* THE NEW YORK CENTRAL RAIL ROAD COMPANY.

Where a contractor, engaged in repairing a bridge upon a rail road for the company, employs men to work thereon by the day, the latter are the servants of the contractor, and not of the company; and between them and the company there is no privity whatever.

If a man, thus employed by the contractor, receives an injury from a passing train while at work upon the bridge, he may maintain an action for damages against the rail road company; provided he can show that the injury was caused by the negligence of the company's servants or agents in charge of the train, without any fault or negligence on his part.

MOTION for a new trial, on exceptions, which were ordered to be first heard at a general term. The plaintiff claimed to recover for an injury sustained by him, while at work upon a bridge which was undergoing repairs, on the road of the defendants, on the 12th of August, 1857. He alleged in his complaint, which was sworn to, that he was a carpenter and joiner, and as such the defendants employed him to do certain work and repairs upon the track

of their said road, and in and upon a bridge ·on their said road at or near Wende, in the county of Erie; and he alleged the injury to have occurred while so in the *employment* of said defendants. The testimony of the plaintiff was not inconsistent with this allegation. On his direct examination, he says he was employed by Fowler; that Fowler was employed by the defendants. On his cross-examination, he states the manner of his employment, viz. that Gordon called on him to work on the rail road some time in July, and told him what he wanted him to do, and that it was to repair an old bridge at Wende, and he went. It appeared that there were two tracks on this bridge; that the repairs consisted in putting up some new trusses; that the tracks are straight for some miles; that on the occasion of the alleged injury, the plaintiff was on the top of the bridge for the purpose of carrying some materials from the east part of the bridge towards the west; that there was a passenger train approaching from the west, and a gravel train approaching from the east; that as the passenger train was passing off from the bridge, the gravel train was passing on; that the plaintiff was looking down, and stooping over, trying to keep his hat on, and did not hear the bell or whistle of either train: he saw the train coming from the west, but did not see the other, and was hit by the gravel train.

When the plaintiff rested, the counsel for the defendants requested the court to nonsuit the plaintiff, on the grounds, 1. That the plaintiff had failed to show that the injury was occasioned without fault on his part. 2. That the proof showed that the plaintiff was himself negligent; and that this negligence contributed to produce the injury complained of. 3. That the proof failed to show negligence on the part of the defendants. 4. That the proof showed that the plaintiff was in the position of an employee of the defendants, and could not maintain the action, if occasioned even by the negligence of those engaged in running the train. The motion

Young *v.* New York Central Rail Road Company.

for nonsuit was granted by the court; and the judge stated, in granting the motion, that he regarded the case as coming within the rule of those cases holding that the liability to injury was incident to such employment; and that the plaintiff, in accepting such service, must be regarded as having known the use to which the defendants' road was subject; and that he was, therefore, to incur such hazard as might be occasioned by such use; that he must be taken to have contracted with reference to the running of the cars over the bridge during the time of making the repairs. To which ruling and decision of the court, the counsel for the plaintiff excepted.

*O. H. Palmer*, for the defendants. I. The plaintiff was an employee of the defendants, and cannot recover for the alleged injury, if occasioned even by the negligence of the persons engaged in running the gravel train. (*Coon* v. *Syracuse and Utica R. R. Co.*, 1 *Seld.* 492. *Russell* v. *Hudson River R. R. Co.*, 17 *N. Y. Rep.* 134. *Sherman* v. *Rochester and Syracuse R. R. Co.*, *Id.* 153. *Boldt* v. *New York Central R. R. Co.*, 18 *N. Y. Rep.* 432. *Farwell* v. *Boston and Worcester R. R. Co.*, 1 *Am. R. W. Cases*, 339. *Hayes* v. *Western R. R. Co.*, 1 *id.* 564. *Pierce on Railway Law*, 286, 310.) Having alleged that he was an *employee* of the defendants, and *sworn to the fact*, he is estopped from controverting that fact now. Besides, the proof shows such to have been his relation to the defendants.

II. The plaintiff, in accepting the service, assumed the liability to injury incident to the employment, and must be regarded as having known the use to which the defendants' road was subject; and that he was therefore to incur such hazard as might be occasioned by such use; and must be taken to have contracted with reference to the running of the cars over the bridge during the time of making the repairs. He was told in the outset what was wanted of him, and what

he was to do, viz. to repair an old bridge. He knew it supported a double track; that each track was in use.

III. The proof does not show any negligence on the part of the defendants. Such negligence must be affirmatively shown. (*Button* v. *The Hudson River Rail Road Company,* 18 *N. Y. Rep.* 248.)

IV. The plaintiff failed to show that the injury was occasioned without fault on his part. (18 *N. Y. Rep.* 248.) But the proof shows that the plaintiff himself was negligent, and that his negligence contributed to produce the injury complained of. The track east of the bridge was perfectly straight for several miles. He went east on the bridge while the gravel train was approaching from that direction, and could have seen it if he had looked. He neglected to look in the direction of the approaching gravel train, but turned his back upon it when in plain view. His own want of care and prudence was, therefore, the prominent cause of the injury.

*T. Frothingham,* for the plaintiff. The nonsuit should not have been granted. 1. The 1st and 2d grounds of defendants' application for nonsuit, viz. that the proof showed that the plaintiff was guilty of negligence on his part, and that the defendants were not guilty of negligence on their part, is answered by reference to the evidence, which is *entirely* in favor of the plaintiff on these points ; and *at all events,* enough a question of fact to be submitted to a jury. 2. There remains then the 3d ground, and the only one on which in fact the nonsuit was ordered by the court, viz. that the plaintiff was an employee of the defendants, and must be deemed to have contracted with reference to the risks, &c. The answer to that is, that he was not an employee. 1st. Because there was no privity of contract between them. 2d. It affirmatively appears that the employee of the defendants was one John Fowler, contractor, and that the plaintiff wrought for *him* by the day. 3d. The plaintiff could not have recovered from the defendants the pay for his services. 4th. The defendants would not

have been liable to third persons for any negligent act of the plaintiff while at work. 5th, The defendants' contract was not that of an operative on the road, and consequently he was not to run the risk of an operative, but only to work on a structure on the road. 6th. If he is to be presumed to have contracted with reference to any risk, it must have been only such risk as the *nature* of the work indicated; and it appears from the fact that they had taken out the supports of the bridge, and blocked up for the regular trains, so as to enable them safely to cross, that the only risk contemplated was from the running of the regular trains; that it was not contemplated that two trains should run over the bridge at the same time, or that any train should run over the bridge, without blocking. 7th. It cannot be presumed that he contracted with reference to any risk arising from the running of trains on the road, but only with reference to accidents arising from the nature of his own occupation, independent of the road. (3 *Mees. & Wels.* 1. 4 *Metcalf,* 49. 4 *Selden,* 175. 18 *N. Y. Rep.* 432. 17 *id.* 136, 156. 6 *Barb.* 231. 1 *Selden,* 50. 5 *Barn. & Cress.* 560. 12 *Adol. & Ellis,* 737.)

*By the Court,* JOHNSON, J. The plaintiff was nonsuited, as appears from the case, on the ground that his claim fell within the rule of those cases holding that the liability to injury was incident to his employment, and that the plaintiff, in accepting such service, must be regarded as having known the use to which the defendants' road was subject; and that he was therefore to incur such hazard as might be occasioned by such use; and must be taken to have contracted with reference to the running of the cars over the bridge during the time of making the repairs. The case was disposed of, therefore, without regard to the question whether the injury was caused by the negligent acts of the defendants' agents or servants, in the regular course of their employment. Whether the case was properly disposed of upon this ground depends entirely, as I conceive, upon the question whether the plain-

tiff, at the time of the injury, was in fact the servant or em-ployee of the defendants. The general rule is, that if a servant, while in the employment of his master, by his negligence, does any damage to another, such master shall be answerable for his neglect, because it is the duty of the master to employ servants who are skillful and careful. (1 *Bl. Com.* 431. 2 *Kent's Com.* 259.) "This rule," says *Chief Justice Shaw,* in the leading case of *Farwell* v. *Boston and Worcester Rail Road Corporation,* (4 *Met.* 49,) " is obviously founded on the great principle of social duty, that every man, in the manage-ment of his own affairs, whether by himself, or by his agents or servants, shall so conduct them as not to injure another; and if he does not, and another thereby sustains damage, he shall answer for it. If done by a servant in the course of his employment, and acting within the scope of his authority, it is considered, in contemplation of law, so far the act of the master that the latter shall be answerable *civiliter*. But this presupposes that the parties stand to each other in the rela-tion of strangers, between whom there is no privity; and the action in such case is an action sounding in tort. The form is trespass on the case for consequential damages. The max-im *respondeat superior* is adopted in that case from general considerations of public policy." But this maxim has been held not to apply to the case of an injury to a servant or em-ployee, occasioned by the negligence of another servant or employee, of the same master. The reason assigned for this exception is, that the relation between the employer and the servant rests in contract only, and that there is no implied contract, on the part of the employer, of indemnity to the servant, against injuries, in the course of the business in which the latter is engaged.

The rule established in such cases from considerations of justice, as well as policy, is, that he who engages in the em-ployment of another, for the performance of specified duties and services, for compensation, takes upon himself the natural and ordinary risks and perils incident to the performance of

such services, and in legal presumption the compensation is adjusted accordingly. (*Farwell* v. *Boston and Worcester Rail Road Corporation, supra.*) This rule has been followed in several cases in our own courts, and is the settled law of this state. (*Coon* v. *Syracuse and Utica Rail Road Co.*, 1 *Seld.* 492. *Russell* v. *Hudson River Rail Road Co.*, 17 *N. Y. Rep.* 134. *Sherman* v. *The Rochester and Syracuse Rail Road Co., Id.* 153. *Boldt* v. *The New York Central Rail Road Co.*, 18 *id.* 432.)

The ground of exemption of the master, in all these cases, is the privity of contract between him and the person injured, from which the law presumes an agreement between them, for a compensation equal to the risk or peril of the service. If, therefore, the plaintiff in this case was not, in any legal sense, the servant or employee of the defendants, but was the servant or employee of another, and there was no privity between him and the defendants, the decisions referred to do not apply, and the defendants must be liable upon the general rule, to the plaintiff, the same as to any other stranger. The defendants can claim no benefit or exemption from a contract made between the plaintiff and another party, whatever risks he may have assumed, as between himself and his employer. It is claimed, however, on the part of the defendants, that the plaintiff was their servant or employee, and that having alleged in his complaint that he was such servant or employee, and verified the complaint by his oath, he cannot now deny that such was the character in which he was employed at the time of the injury. It is so alleged in one count or cause of action in the complaint, and not in the other. In the first count or cause of action it is merely alleged that the plaintiff was lawfully upon the bridge at the time of the injury. But the defendants have, by their answer, put both allegations in issue. They deny that he was lawfully there, and also that he was their servant or employee. And the answer, as well as the complaint, is duly verified. The pleadings, therefore, determine nothing in regard to the question,

and the fact must be determined from the evidence before the court when the plaintiff rested. From the evidence it appears that the plaintiff, at the time he received the injury, was at work for Fowler, by the day, in repairing the bridge, and that Fowler was a contractor with the defendants. This is all that appears. If Fowler was a contractor with the defendants to do this job, he was not, in any legal sense, their servant or employee, and the men employed by him to do the work certainly stood in no such relation to the defendants. They were his servants exclusively, and between them and the defendants there was no privity whatever. And I think it cannot be doubted, that had one of the persons employed by the defendants to run their trains been injured by the negligence of one of the persons so employed by Fowler, he would have been answerable for the negligence. It could scarcely be pretended, in such a case, that the negligent, and the injured, employees were, both, servants of the same employer. And the rule must be reciprocal. There is a wide and obvious distinction between a contractor or jobber, and a mere servant or employer, of the person who lets the contract. The latter could never be held responsible for the negligent acts of the former as for those of his servants, for the simple reason that none of them stand in the relation of servant to him. In the case in 4 *Metcalf*, (before cited,) the learned justice who delivered the opinion, puts the case of a rail road owned by one set of proprietors whose duty it was to keep it in repair, and have it at all times ready, and in a fit condition for the running of cars, taking a toll, and the cars and engines owned by another set of proprietors, paying toll to the proprietors of the road, and receiving compensation from passengers for their carriage; and the engineer of the proprietors of the cars receiving an injury from the negligence of the switch-tender of the proprietors of the road. In such a case, the opinion is expressed that the proprietors of the road would be liable to the engineer. And this is put upon the ground, that as between the engineer, employed by the proprietors of the

engine and cars, and the switch-tender employed by the cor-
poration, the engineer would be a stranger, between whom and
the corporation there could be no privity of contract.

That principle would obviously control this case. The
plaintiff being the servant of Fowler, stood in no relation of
privity to the defendants. As to them he was a mere stran-
ger, for whose conduct they were in no respect responsible,
and to whom they owed the same duty which they owed to
any other stranger. The same principle has been recently
established in the court of appeals in this state, in the case
of *Smith* v. *The New York and New Haven R. R. Co.,* (19
*N. Y. Rep.* 127.) It follows from this that the plaintiff was
improperly nonsuited, if the evidence tended to show that the
injury was caused by the negligence of the defendants' serv-
ants in charge of the train which came in contact with the
plaintiff at the time such injury was inflicted. The plaintiff
was lawfully there, engaged in the work he was employed to
perform. The defendants must be presumed to have known that
the plaintiff and others were there employed, as the struct-
ure was part of their road, and they owed the plaintiff, and
others similarly situated, a duty to observe due care and cau-
tion in running their trains, so as not needlessly to place them
in peril.

The evidence tends to show that the regular passenger
train, and a gravel train, which had not before passed that
place while the plaintiff had been employed there, met upon
the bridge, and that while the passenger train gave the usual
signal of its approach, ringing the bell and blowing the whis-
tle, the gravel train came on without giving any such warning,
and struck the plaintiff while he was observing, and in the
act of avoiding, the passenger train.

Whether the running of this unusual train in this manner,
at this place, was, under all the circumstances, negligent or
otherwise, was clearly, as it seems to me, a question of fact
for the jury; as was also the question whether the plaintiff,

situated as he was, was free from fault, or whether his own want of care did not contribute to the injury.

This question, as has been seen, was not passed upon as a question of law even, and did not enter at all into the considerations which controlled in the disposition of the case. I am of opinion, therefore, that a new trial must be granted, with costs to abide the event.

New trial granted.

[MONROE GENERAL TERM, December 5, 1859. *T. R. Strong, Welles* and *Johnson,* Justices.]