Merle I. ZWEIFEL, Appellant
(Defendant below),

v.

STATE of Wyoming, on the relation of Clarence A. BRIMMER, Attorney General of the State of Wyoming, Appellee (Plaintiff below).

No. 4194.

Supreme Court of Wyoming.

Jan. 4, 1974.

Edward L. Grant of Osborn & Grant, Cheyenne, for appellant.

Clarence A. Brimmer, Atty. Gen., William M. Sutton, Sp. Asst. Atty. Gen., Cheyenne, for appellee.

Before PARKER, C. J., and McEWAN, GUTHRIE, McINTYRE, and Mc-CLINTOCK, JJ.

Mr. Justice McCLINTOCK delivered the opinion of the Court.

Merle I. Zweifel appeals from the order of the District Court of Laramie County, Wyoming, granting default judgment to plaintiff. The order for this judgment was entered October 31, 1972, after defendant had failed to file answers or objections to interrogatories of the plaintiff served on defendant on May 3 of that year. Defendant asserts upon appeal that his motion to dismiss the complaint and a subsequent motion to vacate the default judgment, filed November 6 and denied by order entered after notice on appeal had been filed and served, should have been sustained.[1]

The complaint first states that the action is initiated by the state of Wyoming through its attorney general, in its own behalf and in behalf of its residents and citizens who own lands and minerals the title of which has been or may be affected by the activities of the defendant. Legal authority to institute the action is said to

1. Upon oral argument of the case defendant's counsel complained of a number of statements of "fact" contained in the brief of the attorney general. We recognize that such statements are not proper representations of the facts and throughout this opinion will accept as fact only such matters as are alleged in the complaint or other documents properly of record in the case.

rest on § 9–132, W.S.1957 [2] and venue of the action in Laramie County is said to be justified by § 1–36, W.S.1957.[3]

In brief synopsis, the factual allegations are that the defendant has filed and will continue to file placer mining claims in the offices of several of the county clerks of the state [4] on large tracts of "public and private" lands within the state, which claims purport to claim interest in and to minerals "underlying lands belonging to the State of Wyoming, as well as Federal and private lands" and lands belonging to the municipal city of Cheyenne; that in addition to filing these claims and in order to maintain and perpetuate the same under the mining laws of the state of Wyoming and the United States defendant has filed and will continue to file affidavits of assessment; that in the course of "making blanket mining claims upon thousands of acres of lands" [5] within the state the defendant "has failed and will continue to fail to comply" with statutory prerequisites set forth in § 30–10, W.S.1957,[6] requiring that before filing the location certificate the discoverer of valuable minerals must locate his claim by fixing upon each claim a notice containing the name of the claim and locator, the date of the discovery and the number of acres claimed, and must in addition place substantial posts or stone monuments marking the corners of the claim on the ground; that by reason of such failure to comply with the statute the claims are invalid and of no force and effect.

The complaint further alleges that there is no provision of Wyoming law for the acquisition of an interest in minerals belonging to the state of Wyoming or in private ownership by filing mining claims; that the claims filed by defendant are without any right whatsoever; that defendant has no estate or interest in the minerals or the surface of these private and state lands and no possessory right therein, but that the claims constitute a cloud upon such state and private ownership.

It is further alleged that defendant has sold and intends to sell interests in said invalid mining claims, which sale to the general public is contrary to the best interests

2. " * * * The attorney general, his deputy or any of his assistants are hereby authorized to go into any of the courts of the State of Wyoming or the United States and prosecute or defend on behalf of the state whenever in the opinion of the attorney general the interest of the state would be best served by so doing."

3. Section 1–30, W.S.1957, relates to the venue of actions concerning real property. Following sections relate to other types of actions, none of which is pertinent to this case. Section 1–36, W.S.1957, provides: "An action other than one of those mentioned in the first four sections of this article [§§ 1–30 to 1–33] against a non-resident of this state, or a foreign corporation, may be brought in any county where the cause of action arose or where the plaintiff resides." The seat of the state government is at Cheyenne, in Laramie County, and the attorney general has his office in the capitol building at that location.

4. As we understand the complaint this and other references in the complaint to "filing mining claims" relate to the filing for recordation in the county clerks' offices of certificates of location, as provided in § 30–10, W.S. 1957. This statute requires the discoverer of

a placer claim, within 90 days after the discovery, to "cause such claim to be recorded in the office of the county clerk", setting forth certain required information, and continues: "Before filing such location certificate, the discoverer shall locate his claim: First, by securely fixing upon such claim a notice in plain painted, printed or written letters, containing the name of the claim, the name of the locator or locators, the date of the discovery, and the number of feet or acres claimed; second, by designating the surface boundaries by substantial posts or stone monuments at each corner of the claim." The record does not enlighten us as to the manner in which Zweifel claims to have made discovery of locatable minerals.

5. According to affidavit of the defendant filed with his motion to vacate the judgment, more than 70,000 separate placer claims have been filed involving some 3,000 co-locators. A placer mining claim may properly cover 160 acres of land, so although Zweifel does not disclose the amount of acres involved, it is not unreasonable to assume that some ten million acres of land may be affected by these filings.

6. *Supra*, n. 4.

of an uninformed public and landowners within the state; that if defendant is permitted to hold, maintain, and deal in mining claims filed by him and to continue to file such claims on state and privately owned lands within the state, and is permitted to perpetuate his claims already filed, the citizens of the state will suffer irreparable harm and injury; and that if defendant continues to perform assessment work as he purports to have done, and goes upon the lands as required by law, a trespass will occur upon the lands of the state and its citizens to their further irreparable harm and injury.[7]

The prayer of the complaint asks first that defendant be required to appear and set forth the nature of his claims and that all his claims adverse to the state, its citizens and municipalities be determined by decree; second, that defendant be enjoined from further filing any placer mining claims to lands and minerals belonging to the state, its citizens and municipalities and from filing affidavits of assessment work to maintain and perpetuate said claims. The third prayer is that defendant be required at his cost

> " * * * to file a release of claim to any and all claims which may have been invalidly filed by him within the State of Wyoming, and that in the event of failure by him so to do, a decree of this Court may provide for the release of any such claims;"

and finally the plaintiff prays such other and further relief as the court may deem equitable.

Pursuant to stipulation of the parties and order of court fixing time to plead, defendant on April 13, 1972 filed a motion to dismiss, and on April 14 filed separate motions for more definite statement and to strike paragraph (a) of the prayer of the complaint. The motion to dismiss is based upon the grounds that the state has no standing to sue with respect to any lands other than its own; that there is improper venue; that the court fails to have jurisdiction over the subject matter of the complaint; and that the complaint fails to state a claim against defendant upon which relief can be granted.

On May 3 the State served interrogatories on defendant's attorney seeking a considerable amount of specific information, which interrogatories had not been answered or objected to by defendant by June 8, on which date all the motions were argued and the court then signed an order entered June 13, reserving action upon the motions for definite statement and to strike until after the interrogatories had been answered, denying the motion to dismiss, allowing defendant 20 days in which to file answer to the complaint, and allowing him until July 8 to file answers to interrogatories.

An answer was filed within the time fixed, denying the allegations of the complaint "for the reason that they are not true or that the Defendant does not know whether or not they are true and therefore denies the same", again raising the question of jurisdiction and venue, asserting that the mining claims are valid and legal, and that the state of Wyoming is not irreparably harmed by the actions of defendant wherefore he should not be enjoined from further filing placer claims within the state, wherefore the complaint should be dismissed.

Defendant again failed to answer or object to the interrogatories and on July 14 plaintiff served and filed a motion for default judgment. By order of the court entered July 21 this motion was set for hearing on August 4. Presumably the matter was heard on that date, but no written or-

---

7. An affidavit incorporated as an exhibit to the complaint, executed by the special assistant attorney general signing the complaint, states that he has been informed by the county clerks of Albany and Carbon counties that Zweifel has filed mining claims affecting described lands shown by the records to be owned by the city of Cheyenne (Albany County) and the state of Wyoming (Carbon County), as well as undescribed lands (in both counties) held in private ownership. There is no reference to lands in Laramie County in the complaint or in the affidavit.

der was entered until October 31. This order recites that the matter was heard on argument of both counsel, and that defendant had failed to file answers or objections to the interrogatories of plaintiff filed May 5 and to file answers within 30 days after the entry of order for such answers entered June 13. It is also expressly recited that defendant "has neither sought relief from answering said interrogatories nor shown to this Court any justification for such failure to file answers." [8]

The order of October 31 directs that all of the material allegations of the complaint be taken as true, the answer of the defendant be stricken, and that judgment as by default be entered in plaintiff's favor. Reciting that the State had previously been ordered to file affidavits establishing the truth of the allegations in the complaint,[9] which affidavits had been considered by the court, it was ordered that all placer mining claims filed by the defendant, his agents, or employees, within the state of Wyoming,

> "be and are hereby declared to be invalid *unless the Defendant shall prove unto this Court that said placer mining claims were filed pursuant to complete compliance with the laws of the State of Wyoming,*" (Emphasis supplied.)

and that until he should prove such complete compliance with the law defendant was enjoined from filing affidavits of assessment work or affidavits seeking to defer assessment work. Further, the defendant is enjoined from filing any placer mining claims on lands and minerals within Wyoming "unless such claims are established and filed pursuant to complete compliance with the laws of the State of Wyoming." The order was declared to apply to all placer mining claims filed by the defendant involving lands within the state of Wyoming, including federal, state, county, municipal, and privately owned lands.[10]

Following entry of this default judgment and on November 6, defendant filed separate motions to strike affidavits and to vacate the default judgment. This latter instrument asserts that the judgment is contrary to law and to the evidence; that there was excusable neglect on the part of defendant in failing to file the answers, incorporating an affidavit of the defendant attached to the motion; that the judgment is void for want of proper venue and lack of jurisdiction of the District Court of Laramie County because there were no involved lands located in that county; that an attached certified copy of a complaint filed in the United States District Court [11]

8. Except for failing to file answers or objections defendant was at all time active in the cause: the motion to dismiss was argued and a written memorandum submitted in behalf of defendant; the motion for default judgment was argued; and the orders entered on both these motions bear the signature of defendant's then attorney of record showing approval of the orders as to form.

9. The record is not clear concerning the court's order requiring the State to file affidavits before entry of judgment, and no written order appears in the record. It is reasonable to assume that this was done orally and that the time between August 4 and October 30 was taken up in obtaining the information which is set forth in affidavits of a landowner, geologists, and a land man, filed on the latter date. The information set forth in these affidavits was that actual inspection had been made of a large quantity of lands (some specifically described in Campbell County and others only generally referred

to as being in Fremont and Carbon Counties) as to which defendant had filed location notices, and that this inspection showed no posts, monuments, notices, or other indicia of mining location.

10. The foregoing synopsis discloses that there are substantial differences between the judgment as prayed and as entered. We also note that nothing appears in the record disclosing that permission to amend the complaint was requested.

11. The record does not contain a copy of this complaint but we believe that we may properly take judicial notice of its filing and the proceedings therein. This action, United States v. Merle I. Zweifel, No. 5784, was filed in the federal district court of Wyoming on October 17, 1972, and on December 26, 1973 that court entered judgment in favor of the United States, quieting title to its mineral interests against all claims of the defendant and his co-locators. The suit involves at least in part some of the lands in Campbell

shows that the same relief is sought in the federal action and that only that court may properly hear actions to invalidate mineral estates located on federal lands; that agents and employees of the defendant are not parties to the action and should not be bound; and that the order is invalid because based upon improper affidavits. Without allegation of any facts, either in the motion or in the annexed affidavit, it is asserted that "Defendant has a good, valid and meritorious defense to the Complaint of Plaintiff".

The annexed affidavit was sworn to by Merle I. Zweifel in Oklahoma on August 5 (the day after argument upon the motion for default judgment) but never filed with or delivered to the district court until the filing of the motion on November 6. In this affidavit defendant for the first time attempts to excuse his failure to respond to the interrogatories, stating that while he has been diligently working on the answers it has been impossible for him to complete the work because some 3,000 co-locators and 70,000 mining claims are involved; that to answer the interrogatories requires the composition of voluminous material; and that he has only a small force and to draft the answers would require 90 additional days. These motions were denied by order of the lower court entered December 18, after notice of appeal to this Court had been served and filed on November 20.

## PROPRIETY OF THE DEFAULT JUDGMENT

Although by his own statement Zweifel has filed some 70,000 placer mining claims in Wyoming, using some 3,000 co-locators, at no place in the record do we find any allegation or other showing that would have justified the court below or this Court in holding that even one of the locations was initiated in compliance with the laws of the United States or the state of

Wyoming. Defendant was content to make only a general denial of allegations that he had filed location certificates in the county clerks' offices without doing location work upon the ground. That allegation of fact was substantially supported by affidavits of competent geologists who had done walkouts of the premises. While these affidavits did not disclose that every legal subdivision as to which Zweifel had recorded a certificate had been inspected and found to be devoid of any posts or notices on the ground of the placer mining claim, we think that in the absence of any specific showing by defendant to the contrary they were proper proof of the allegations of the complaint.

Defendant was given every opportunity to respond to the interrogatories and furnish factual information. Although on June 8 he was in default for failure to respond or object thereto, the court at that time gave him another 30 days. That date passed with no action by him. Knowing that a motion for default had been filed and having some two weeks notice of the setting of argument thereon, he made no attempt to justify his failure to answer or to get further extension of time. It was not until after argument and presumably an orally announced adverse decision and request for additional affidavits in behalf of plaintiff that he got around to preparing an affidavit concerning the difficulties of preparing and filing the answers, which was not then filed but retained by defendant or his counsel until November 6, a week after the judgment had been entered.

Even after judgment had been entered and in connection with his motion to vacate, defendant made no attempt to be factual; his statement that he has a meritorious defense is completely without factual substantiation, a procedure that we have consistently rejected.[12] Rule 37(d), W.R.C.P., is explicit in permitting the en-

---

County that were described in some of the affidavits filed with the court below. We do not construe the lower court judgment in any manner to adjudicate the interest of the Unit-

ed States or the validity of claims as against the United States.

12. See Martellaro v. Sailors (Wyo.1973), 515 P.2d 974, 976.

try of default judgment against one who fails to file answers to interrogatories or to excuse such failure. The trial court was therefore amply justified in granting the default judgment, and the action taken was clearly no abuse of discretion. While its action in denying the motion to vacate the judgment was probably taken after its jurisdiction of the cause had ended, we have no doubt that it was correct and there is no basis for this Court to set aside the default and permit further proceedings in the action unless defendant is correct in his contention that the judgment was legally erroneous.

## THE MOTION TO DISMISS

### Sufficiency of the Complaint

■ The attorney general advances the argument that because the trial court has found all material allegations of the complaint to be true, it is an unassailable finding that Zweifel has filed false mining claims not in compliance with the law, that the claims are without right under the law, that the attorney general has the right to bring the action, and that the action is in the best interests of the state. We think that the statement in 10 Wright and Miller, Federal Practice and Procedure: Civil § 2688, p. 282, is more apt, that is, that

"Once the default is established defendant has no further standing to contest the factual allegations of plaintiff's claim for relief."

Consistent with this, it is said in 5 Am. Jur.2d, Appeal and Error, § 854, p. 296,

" * * * On appellate review of a default judgment the party in default may contest the sufficiency of the complaint and whether the averments in it justify the judgment appealed from, but may not question the lack of evidence or the sufficiency of the evidence to prove the allegations of the complaint. A default judgment will be reversed on appeal where it appears from the plaintiff's

declaration that it does not set forth a cause of action."

Applying this rule to the case at bar, we think it can properly be said that the trial court has made a finding supported by ample evidence that defendant filed location certificates in the offices of the several county clerks when he had not first done the necessary location work upon the ground. From that factual basis we proceed to consider whether this is an actionable wrong which the attorney general, as the chief legal officer of the state, can attack.

In his brief and argument defendant construes the complaint as being one to quiet title and stresses those allegations of the complaint that are customary in such an action. On this premise he can then contend with some logic that the venue of the case was improperly laid in Laramie County, no lands in that county being involved in the action; that class action procedures were not followed; and that the complaint did not state facts sufficient to constitute a claim for quiet title since title to the minerals really affected was in the United States, with emphasis on the fact that the United States had filed its own action in federal court.[13] The argument, of course, is that the state courts have no right or power to adjudicate the validity of such claims for or against the United States.

While it is true that there are many allegations in the complaint usually contained in quiet title suits, the attorney general contends and we agree that the complaint alleges more than this and that under the direction of § 9–132 he has the power and duty to protect the state and its citizens against abuse of its laws, in this instance claimed to be a willful violation of Wyoming's laws relative to the institution and perfection of mining claims. He points out that the judgment does not quiet title to any lands, but declares void certain previous acts of the defendant and enjoins future action on the part of the defendant in

13. *Supra*, n. 11.

violation of those state laws relative to filing mining claims. We agree that this is so.

Without entering into any discussion of the manner by which certain public minerals may be acquired, we note that the provisions of the Act of May 10, 1872 (17 Stat. 91, 30 U.S.C. § 22 et seq.), as amended, do not provide the whole method for either initiating or protecting such entries but do specifically require that the "location must be distinctly marked on the ground so that its boundaries can be readily traced." 30 U.S.C. § 28. Miners of each mining district may make regulations not in conflict with the laws of the United States or the laws of the state. *Id.*

Consistent with this recognition of the applicability of state law, Wyoming has enacted detailed provisions relating to the institution and perfection of mining claims, both as to lode and placer. We have previously referred to § 30–10, W.S.1957, which provides for the recording in the county clerk's office of a certificate of location setting forth certain information concerning the location but which may be filed only after certain acts have been performed upon the ground.[14]

If, then, the action is one to quiet title, it is equally one to secure a judicial determination that a specific act of the defendant is a nullity, namely, the filing for recordation of a certificate of location without having performed the other acts required by our state law to institute a valid mineral location. We specifically refer to allegations in the complaint that defendant has filed placer mining claims "on large tracts of public and private lands" within the state; that the claims (certificates of location) so filed "purport to claim interests in and to minerals underlying lands belonging to the State of Wyoming, as well as Federal and private lands" within the state; and that defendant, in making these blanket filings has failed to comply with the statutory prerequisites.[15]

We thus find in the first three paragraphs of the complaint allegations that justified the court below and justify this Court in finding that defendant was attempting to proceed in a manner not permitted by our law, thereby flouting that law as to how mining locations should be effected. At the same time he was ignoring the federal law which contains the basic grant of the right to acquire certain minerals through the location process.

Under the specific factual allegations of the complaint, sustained by factual affidavits, the defendant has failed to do essential and prerequisite location work upon the ground and thousands of acres are claimed as valuable mineral properties purely on the basis of the recorded certificates. What this means in practical effect is that any person who might be interested in going upon lands containing locatable minerals owned by the United States and instituting a good faith and bona fide location for such minerals, but who first checked the records in the county clerk's office, would find Zweifel's recorded notices and in all probability conclude that there would be no point in going upon those lands and seeking to discover valuable minerals in an attempt to establish mining claims. In this way, then, Zweifel as to millions of acres has discouraged an activity which over the years has been of considerable economic importance to the state of Wyoming. This is not what the legislature intended. The recordation of the certificate is to protect rights validly initiated, not to act as a bar to proper prospecting.

Moreover, the recording of these location notices imposed a substantial and improper burden upon the county clerks in the various counties where filed, and the

---

14. *Supra*, n. 4.

15. This last allegation is arguably a conclusion rather than fact, but taken in the context in which it is made we think it may properly be considered as an allegation of fact, that is, that defendant filed location certificates without posting a notice upon the claim itself and without placing posts or monuments upon the corners thereof.

filing of assessment affidavits compounds the burden upon these offices.

Finally, and of equal importance to the state of Wyoming and the public officials charged with the duty to enforce its laws is the allegation that Zweifel has sold or intends to sell interests in these claims. The investment by the general public in stocks and other securities is a notable public concern. The state has an equal interest in guarding against the sale of unfounded mineral claims, and references to the claims as being recorded in the office of the county clerk of Campbell County, or Carbon County, may well lend a credibility to the sales promotion that it would not otherwise have.

We hold that questions whether the complaint states facts sufficient to state a claim for quieting title, whether there are defects of parties, or whether the proceedings have been conducted consistently with rules relating to class actions, are immaterial because the complaint states a sufficient claim for relief to clear the public records of false and misleading certificates of location.

*Authority of the Attorney General and Venue*

■ Considering then the authority of the attorney general to prosecute the suit and the proper venue thereof, we hold that this is justified by § 9–132, W.S.1957, authorizing the attorney general to go into any court in the state to prosecute any proceeding which is in his opinion in the best interest of the state. While each individual locator or claimant of mineral interest in lands which may be affected by defendant's grandiose filings would have an individual right to protect his interests by proper action limited to the specific lands claimed, the evil here attacked is much broader than one mineral claimant or one county attorney can be expected to cope with. It represents a wholesale perversion of the beneficent purposes of the federal and state mining legislation designed to award the diligent search for and development of mineral wealth. To say that such

action must be attacked piecemeal and upon a claim by claim basis would be to deny efficacy to the statutory restrictions on the initiation of mining claims. We do not think that the attorney general of this state must sit idly by while those mining laws are ignored in such a wholesale fashion.

It has been held that the attorney general of the state of California was the proper party to cancel allegedly fraudulent voter registrations, Pierce v. Superior Court in and for Los Angeles County (1934), 1 Cal.2d 759, 37 P.2d 460, 461, where it was said that it was a state prerogative to provide elections, and, further,

"If, as we hold, the state may maintain such an action, the right of the Attorney General to institute it may not be attacked. The Attorney General, as the chief law officer of the state, has broad powers derived from common law, and in the absence of any legislative restriction, has the power to file any civil action or proceeding directly involving the rights and interests of the state, or which he deems necessary for the enforcement of the laws of the state, the preservation of order, and the protection of public rights and interests."

In United States v. San Jacinto Tin Co. (1888), 125 U.S. 273, 8 S.Ct. 850, 31 L.Ed. 747, without any legislative designation as to who might represent the United States in a suit to annul a false patent, the court said (p. 279, 8 S.Ct. at p. 853):

" * * * we cannot believe that where a case exists in which this [cancellation of patent] ought to be done it is not within the authority of that officer to cause such action to be instituted and prosecuted."

Defendant's objection to the maintenance of the suit by the attorney general is predicated on the theory that the suit is one to quiet title to lands of the United States and we would agree that the attorney general has no authority to bring such action. But considering the action as one to enforce the laws of the state applicable to the

filing and recording of mining claims, and keeping in mind that the judgment of the court below or of this Court has no bearing upon the title of the United States or any claimant from it in or to specific lands, or the possessory rights therein, we think that the authority of the attorney general to maintain the action must be sustained.

On the basis that the action is not a quiet title action it also follows that the action as prosecuted to judgment is not one involving land and the provisions of such statutes as relate to the maintenance of suits affecting real property do not apply. We think that the attorney general correctly relies upon § 1–36, and that the venue of a general action by him to enforce the laws of the state may properly be filed in the county where he has his office, in this case Laramie County.

### VARIANCE BETWEEN THE JUDGMENT AND THE DEMAND

Defendant argues that the relief granted in the judgment improperly varies from that demanded in the complaint. The question is not free from difficulty, in view of the express provisions of Rule 54(c), W.R.C.P., providing in pertinent part:

"A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. *Except as to a party against whom a judgment is entered by default,* every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." (Emphasis supplied.)

Previous decisions of this Court[16] holding that relief different from that demanded in the prayer of the complaint may be granted if it is justified by the allegations and proof, are not entirely determinative of this question because judgment in those cases was entered after trial. Without de-

traction of those holdings as to completely contested cases, we do not think that we should ignore the plain import of the above quoted rule as to default cases. Concerning the federal counterpart of and model for our rule, it is said in 10 Wright and Miller, Federal Practice and Procedure: Civil § 2663, p. 99, that the theory of the rule is to permit the defendant to determine from the original pleading whether he wants to expend the money and trouble to defend it, that it is unfair to have the complaint lead defendant to believe that only a certain type of relief was being sought and then, after he has sought to limit the scope of the judgment by not appearing, to give a different type of relief. It is further said that unless the parties have voluntarily litigated an issue not within the pleadings, the court should consider only those issues.

"In sum, then, a default judgment may not extend to matters outside the issues raised by the pleadings or beyond the scope of the relief demanded. A judgment in a default case that awards relief that either is more or different in kind from that requested originally is null and void and defendant may attack it collaterally in another proceeding."

If a judgment may be collaterally attacked, it surely may be attacked upon appeal for noncompliance with Rule 54(c). Most of the cases dealing with this question involve a complete failure of the defendant to make an appearance, while in this case defendant attacked the complaint for insufficiency, he filed an answer denying the material allegations, and he supported his legal position in argument upon the motions to dismiss and for default. It does not appear that the complaint was at any time amended, although the record does show that both defendant's counsel and the attorney general considered the complaint as attacking the filings in the county clerks' offices upon a broad basis. Thus, in a brief submitted to the trial

---

16. Walton v. Atlantic Richfield Co., (Wyo. 1972), 501 P.2d 802; State v. Moore (Wyo. 1960), 356 P.2d 141; and Bentley v. Jenne (1925), 33 Wyo. 1, 236 P. 509.

court in support of motion to dismiss the complaint it is said:

"The Complaint goes so far as to seek this Court to declare invalid those mining claims which the Defendant has filed on federal lands, state lands, municipal lands, and the lands of private individuals. The Complaint is not completely clear that it is this broad but I bring to the Court's attention a letter written by the Plaintiff * * *."

The letter so referred to and attached to the brief is addressed to defendant and states that

"you perhaps have mistaken the import of the complaint we have filed against you because we have alleged invalid staking of all claims filed by you within the State of Wyoming, whether upon Federal, State, or private lands."

It is reasonable to conclude, therefore, that whatever the technical wording of the prayers of the complaint, defendant was aware that plaintiff sought to invalidate the filings as to all claims and not just those filed on state or privately owned lands. While this would not justify a complete departure from the demand of the complaint [17] we do not think that the prayers must be considered as a straitjacket depriving the judgment of any manner of flexibility, as might be the situation in a complete default.

The State's concern was and is with the thousands of pieces of paper being improperly filed in the county clerks' offices, as clearly shown by the complaint, and one explicit prayer is that defendant be required at his own expense to file a "release of claim to any and all claims which may have been invalidly filed by him within the State of Wyoming * * *". A determination that claims should be released would necessarily involve a determination that there was a fatal defect in the filing, so we consider that a declaration of invalidity is by any reasonable interpretation a part of that prayer.

■ We hold, then, that upon the allegations and prayer of the complaint, established by the default of the defendant and the further proof contained in the affidavits submitted by the attorney general, it was proper for the trial court to declare that any and all certificates of location, whether filed on federal, state, county, or privately owned lands, were invalid.

■ However, we think it was unnecessary and improper for the trial court to qualify its declaration as to the invalidity of the filings with the proviso,

"unless the defendant shall prove unto this Court that said placer mining claims were filed pursuant to complete compliance with the laws of the State of Wyoming."

Having found defendant to be in default, the allegations of the complaint true, and that the location certificates were invalid, the declaration that they were a nullity should not itself be annulled by leaving the case open to further proof. We have considered defendant's contention that the proviso rendered the judgment indefinite and not dispositive of the issues,[18] but we believe that the elimination of this proviso leaves no question as to the finality of the judgment.

The further order of the court that defendant is enjoined from filing any placer claims within the state unless such claims are established and filed pursuant to complete compliance with the laws of the state of Wyoming, was probably consistent with the allegations of the complaint and affidavits, but we find no prayer for such relief except as to lands of the state of Wyoming, its citizens and municipalities, and to enjoin the defendant generally was outside the scope of that demand. By the same to-

17. See 10 Miller and Wright, *supra*, § 2663, p. 102 et seq., and 6 Moore's Federal Practice ¶ 54.61, p. 1232.

18. Defendant is faced with the dilemma that if the judgment appealed from is not a final order his appeal was improperly taken and there was nothing before this Court.

ken the injunction against filing assessment affidavits unless defendant should prove to the court that he filed the claims pursuant to complete compliance with the laws of the state, is held to be outside the prayer of the complaint and invalid.

We therefore direct that the judgment of the court below be modified by striking from the fourth paragraph of the order any and all provisions indicating that defendant may appear and present proof to that court designed to show that his claims have been established and filed pursuant to compliance with the laws of the state of Wyoming, and striking the fifth and sixth paragraphs of such order in their entirety.

As so modified, the judgment is affirmed.